UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHERINE T., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br><br> Defendant. | Case No.: 22cv396 <br><br> **ORDER ON JOINT MOTION [Doc. No. 13]** |

Plaintiff Katherine T. filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for benefits. Doc. No. 1. This Court directed the parties to explore informal resolution of the matter through the meet-and-confer process, but the parties were unable to resolve the case on their own. Doc. Nos. 8, 10. On October 25, 2022, the parties filed a Joint Motion for Judicial Review. Doc. No. 13 (the "Joint Motion"). Having reviewed the parties' briefing and the Administrative Record ("AR"), the Court VACATES the decision of the Commissioner in this matter and REMANDS for further proceedings as set forth in this Order.

//
//
//
//

# I. BACKGROUND

Plaintiff applied for Disability Insurance Benefits on September 23, 2019. AR 148-149.[1] The claim was denied initially on March 10, 2020. *Id*. at 76-79. Plaintiff requested reconsideration, but her claim was once-again denied on June 4, 2020. *Id*. at 86-90. On June 8, 2020, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. at 92-93. Plaintiff and her attorney appeared before the ALJ on December 8, 2020. *See id*. at 29-44. Plaintiff's attorney and the ALJ both examined plaintiff at the hearing, and the ALJ received testimony from a vocational expert. *See id*. After reviewing the documentary evidence in the record and hearing the witnesses' testimony, the ALJ ultimately concluded plaintiff was not disabled. See AR 24.

The ALJ's decision followed the five steps prescribed by applicable regulations under which the ALJ must sequentially determine (1) if the claimant is engaged in substantial gainful employment; (2) whether the claimant suffers from a "severe" impairment; (3) if any impairment meets or is medically equal to one of the impairments identified in the regulatory Listing of Impairments; (4) the claimant's residual functional capacity ("RFC") and whether the claimant could perform any past relevant work; and (5) whether a claimant can make an adjustment to other work based on his or her RFC. *See* 20 C.F.R. § 404.1250(a)(4); AR 16-17. The ALJ's evaluation ends if at any individual step the ALJ finds the claimant is or is not disabled. *See* 20 C.F.R. § 404.1250(a)(4).

First, the ALJ determined plaintiff had not engaged in substantial gainful activity because plaintiff had not participated in any work activity since August 31, 2018. AR 17. Second, the ALJ determined plaintiff had the following "severe" impairments within the meaning of 20 C.F.R. § 404.1520(c): "spine disorders including history of compression fractures and degenerative changes in the cervical and lumbar spines with associated multi body area pain." *Id*. at 18. The ALJ also determined that claimant has the following non-

---

[1] The Court adopts the parties' citations to the certified record in this matter. All other citations reflect pagination assigned by the Court's CM/ECF case management system.

severe mental impairments: anxiety and depressive bipolar disorder. *Id*. Third, the ALJ found plaintiff did not have any impairment "that meets or medically equals the severity of one of the listed impairments in [the applicable regulations]." *Id*. at 20. Fourth, the ALJ determined, based on "careful consideration of the entire record," plaintiff had "the residual functional capacity to perform light work as defined in 20 § C.F.R. 404.1567(b) except [she] can lift and[/or] carry 10 lbs. frequently and 20 lbs occasionally; stand and/or walk for 6-hours in an 8-hour workday; sit for 6-hours in an 8-hour workday; occasionally climb ramps and stairs, however, never climb ladders, ropes, or scaffolds; frequently balance, frequently stoop; frequently kneel; frequently crouch; occasionally crawl; avoid unprotected heights and dangerous moving machinery." *Id*. at 20-21.

Fifth, having determined plaintiff's RFC, the ALJ found plaintiff was "capable of performing past relevant work as a[n] executive assistant" because such work "does not require the performance of work-related activities precluded by" plaintiff's RFC. *Id*. at 25. The ALJ accordingly found plaintiff was not disabled. *Id*. The Appeals Council denied plaintiff's request to review the ALJ's decision, which made the ALJ's decision the final decision of the Commissioner. *Id*. at 1. Plaintiff subsequently filed this case challenging the Commissioner's decision. Doc. No. 1. The matter is now ripe for decision by this Court upon the parties' Joint Motion. Doc. No. 13.

## II. DISPUTED ISSUES

The parties jointly assert the sole issue in dispute is whether the ALJ erred in finding Plaintiff's mental impairment non-severe. Doc. No. 13 at 3. Plaintiff avers the ALJ erred by improperly disregarding the opinion of plaintiff's treating physician, Dr. Gregory Paniccia, whose opinion plaintiff characterizes as precluding plaintiff from working a normal workday or a normal workweek. Doc. No. 13 at 4. Plaintiff argues the ALJ should have given special deference to Dr. Paniccia's opinion over that of examining psychologist Dr. Jessica Durr. *See id.* at 5-6. Defendant argues plaintiff analyzes the ALJ's decision using the incorrect legal standard and ignores the substantial evidence supporting the ALJ's finding that plaintiff's impairment is not severe. *See id.* at 6-9.

Notwithstanding how the parties label the issue as limited to the ALJ's conclusion at step two, the substance of the dispute presented to the Court is broader. "[C]ourts consistently prioritize the substance and function over form when characterizing the nature of a dispute or claim." *AT&T Mobility LLC v. Bernardi*, C 11-03992 CRB, 2011 U.S. Dist. LEXIS 124084, at *17-18 (N.D. Cal. Oct. 26, 2011) (collecting cases). Not only do the parties discuss the ALJ's reasoning at step two—which pertains to the severity of a plaintiff's impairments—they also debate the correctness of the ALJ's reasoning at step four where the ALJ assessed plaintiff's residual functional capacity (taking into account the effect of plaintiff's mental impairments). *See generally id.* at 3-11 (repeatedly citing the ALJ's residual functional capacity assessment at AR 19-24). The Court can only conclude the substance of the parties' dispute encompasses the ALJ's RFC assessment at step four as well as the finding of non-severity at step two. This conclusion is also consistent with the Court's need to conduct a meaningful review.

If plaintiff's ***only*** impairments had been mental, then a finding of non-severity would have obviated the need to go through the entire five-step sequential evaluation process. *See generally* 20 C.F.R. 404.1520. Review of the non-severity finding would, therefore, prove dispositive of plaintiff's appeal because this Court could potentially remand to the agency to complete the process if plaintiff's impairment qualified as severe. This case differs because, given the fact that plaintiff had severe physical impairments in addition to her non-severe mental impairments, the ALJ continued the five-step evaluation to its conclusion. *See* AR 19-24. Moreover, the ALJ's analysis of the persuasiveness of the two medical opinions at issue appears only during step four. *See* AR 19-24. At step-four, the regulations do not distinguish between severe and non-severe impairments because the ALJ must consider all impairments to assess RFC, even those that are non-severe. *See* 20 C.F.R. § 404.1545(a)(2). "The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). Because the ALJ completed the full evaluative process, a finding of error at step-two, standing alone, would be virtually meaningless in this case. The Court must

and will address the ALJ's assessment of plaintiff's residual functional capacity because it is the only way to conduct a meaningful review of the ALJ's decision.

### III. STANDARD OF REVIEW

This Court will affirm the ALJ's decision if (1) the ALJ applied the correct legal standards; and (2) the decision is supported by substantial evidence. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Even if the ALJ makes an error, this Court can nonetheless affirm the denial of benefits if such error was "harmless, meaning it was 'inconsequential to the ultimate nondisability determination.'" *Ford*, 950 F.3d at 1154 (quoting *Tommasetti*, 533 F.3d 1035, 1038 (9th Cir. 2008). The Court's ability to uphold the ALJ's decision is limited in that this Court may not make independent findings and therefore cannot uphold the decision on a ground not asserted by the ALJ. *See Stout v. Comm'r of the Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

### IV. ANALYSIS OF THE COMMISSIONER'S DECISION

This Court must first determine which legal framework controlled the ALJ's assessment of competing medical opinions. After determining the correct legal rule to apply, the Court will assess whether the ALJ followed the law and, if so, whether the decision was supported by substantial evidence

**A. Applicable Law for Evaluating Medical Opinions**

Plaintiff argues "[a]s a general rule, the opinion of a treating source is entitled to greater weight than the opinion of doctors who do not treat the Claimant." Doc. No. 13 at 5 (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). "In cases where a treating doctor's opinion is contradicted by another doctor's opinion, an ALJ may reject the treating doctor's opinion only by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Id.* (citing *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)). Defendant argues plaintiff applies the wrong regulation by citing to the "treating physician rule," which has been eliminated since March 27, 2017. *Id.* at 8-9 (citing 20 C.F.R. § 404.1520c(a); *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022)).

Plaintiff filed for disability after March 27, 2017. *See* AR 148. Therefore, the Social Security Administration's revised regulations for considering medical opinions apply. *See* 20 C.F.R. § 404.1520c. Under the revised regulations, an ALJ must evaluate the persuasiveness of any medical opinions and articulate his or her assessment as to each. *Id*.[2] In evaluating persuasiveness, an ALJ considers the medical opinions' supportability and consistency; and the ALJ may also consider the relationship between the source and the claimant, the source's specialization, and other factors such as the source's knowledge of other evidence, social security requirements, and whether there was subsequently submitted evidence. *See* 20 C.F.R. § 404.1520c(1)-(5). Although an ALJ *may* discuss each of the factors to be considered in his or her opinion, the regulations only *require* the ALJ to explain how he or she considered the most important factors—supportability and consistency—when determining a medical opinion's persuasiveness, unless two conflicting medical opinions are both equally well-supported and consistent with the record. 20 C.F.R. § 404.1520c(b)(2)-(3).

The new regulations override the treating physician rule, which automatically gave greater weight to the medical opinions of treating physicians, required clear and convincing reasons for rejecting an uncontradicted medical opinion of a treating physician, and required specific and legitimate reasons supported by substantial evidence in the record for rejecting the contradicted medical opinion of a treating physician. *Woods*, 32 F.4th at 787. Under the revised regulations, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.*; *accord Jones v. Saul*, No. 2:19-cv-01273 AC, 2021 WL 620475, at *6 (E.D. Cal. Feb. 17, 2021); *Julie R. M. v. Kijakazi*, No. 20cv1608-LL-MDD, 2021 WL 4993034, at *4 (S.D. Cal. Oct. 26, 2021). Accordingly, the Court will address the ALJ's evaluation of the medical opinions at

---

[2] "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . ." 20 C.F.R. § 404.1513(a)(2).

issue here under the 2017 regulations, with no regard to the treating source rule advocated for by the plaintiff.

### B. Whether the ALJ Applied the Correct Legal Standards to Plaintiff's Claim

The ALJ must assess all the evidence in the plaintiff's case record. *See* 20 C.F.R. §§ 416.920(a)(2); 416.920b. The applicable regulations do not specify a particular step of the five-step sequential evaluation at which an ALJ must weigh the persuasiveness of competing medical opinions. *See* 20 C.F.R. § 416.920c. Rather, the regulations simply prescribe the factors any ALJ can or must consider when evaluating conflicting medical opinions. *See id.* The only guarantee is that an ALJ "will articulate . . . how persuasive [the ALJ] find[s] ***all*** of the medical opinions" in the record. *Id.* at § 416.920(c)(b) (emphasis added). At a minimum, the ALJ had to consider the supportability and consistency of all opinions. 20 C.F.R. § 404.1520c(b)(2)-(3). Under the regulations, "supportability" is the extent to which a source presents relevant objective medical evidence and explanations to support its opinion or finding. 20 C.F.R. § 404.1520c(c)(1), 416.920c(c)(1). The more relevant the evidence and explanations are, the more persuasive the opinion or finding will be. *See id.* "Consistency" is the extent to which an opinion or finding is consistent with evidence from other medical and nonmedical sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The more consistent it is with evidence from other sources, the more persuasive it will be. *See id.*[3]

At step two of the five-step sequential evaluation, the ALJ reasoned plaintiff's "medically determinable mental impairments of anxiety and depressive bipolar and related disorders, considered singly and in combination, do not cause more than minimal limitation

---

[3] These two inquiries focus on separate aspects of a medical opinion. The supportability analysis looks at the quality of the medical evidence that was in front of the treating physician (or other medical source) at the time he or she offered an opinion. In contrast, consistency evaluates a medical opinion against the weight of other evidence in the record, which evidence was not necessarily presented to the treating physician (or other medical source) at the time he or she offered an opinion.

in the claimant's ability to perform basic mental work activities and are therefore non-severe." AR 18. Based on the records of treating psychiatrist Dr. Gregory Paniccia the ALJ concluded plaintiff's "mental status assessments were essentially normal" during the time she was under his care, and that she "responded well to medication and improved." *See id.* at 18. The ALJ also evaluated plaintiff's mental impairment using the so-called Paragraph B criteria. *Id.*[4] However, the ALJ based this part of his assessment solely on Dr. Durr's report. *See id.* (citing AR 502-08 [Ex. 6F]). The ALJ did not assess the persuasiveness of the two relevant medical opinions at step two. *Id.* at 17-19. Instead, he treated them as if they were wholly consistent with each other. *Id.* As the Court has already noted, whether the ALJ correctly determined plaintiff's mental impairment was not "severe" within the meaning of the regulations has no effect on the ultimate outcome of this case because the ALJ's RFC assessment would have come out the same way regardless of how the ALJ categorized plaintiff's mental impairments at step two. *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). Accordingly, this Court need not evaluate the ALJ's immaterial conclusions at step two. Rather, the dispositive issue in this case is whether the ALJ erred at step four.

At step four, an ALJ must determine if a claimant can return to his or her previous work. *See* 20 C.F.R. § 404.1520(e). As part of that determination, the ALJ must ascertain the claimant's residual functional capacity. *See id.* Based on this Court's review of the record, the reports of Dr. Paniccia and Dr. Durr were the only sources of information directly pertinent to assessing the effect of plaintiff's mental impairment on her residual

---

[4] When an ALJ evaluates the severity of a mental impairment at step two, the ALJ must assess the claimant's level of "functional limitation" in four functional areas that relate to the claimant's ability to "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage [her]self." *See generally* 20 C.F.R. § 404.1520a. These are referred to as the "Paragraph B" criteria. *See id.* § 404.1520a(c)(2); 20 C.F.R. pt. 404, subpt. B, app. 1, ¶ 12.A.2.b. The ALJ's decision must include a specific finding as to the degree of limitation in each of the functional areas. *Id.* § 404.1520a(e)(4).

functional capacity. *See generally* AR 503-08, 531-75, 690-94. As a general principle, Dr. Durr opined plaintiff was not disabled, and Dr. Paniccia opined plaintiff was unable to work. *Compare id.* at 503-08 *with id.* at 690-94. At step four, the ALJ rejected Dr. Paniccia's opinion in favor of Dr. Durr's. *See id.* at 23-24.

The ALJ correctly acknowledged he could not "defer or give any specific evidentiary weight, including controlling weight, to any prior . . . medical opinion(s). . . ." *Id.* at 22. When he evaluated the persuasiveness of Dr. Durr's opinion, the ALJ found it was "consistent with [plaintiff's] clinical presentation and . . . supported by intelligence testing." *Id.* at 23. "Consistency" measures how consistent a medical opinion is with other evidence in the record. *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The "clinical presentation" with which the ALJ found Dr. Durr's opinion "consistent" is a reference to plaintiff's presentation **before Dr. Durr** during plaintiff's evaluation in January 2020. *See* AR 23. The ALJ did not actually compare Dr. Durr's opinion to any other evidence in the record. *See id*. Plaintiff's presentation before Dr. Durr is more appropriately considered a measure of supportability because it refers to the evidence on which Dr. Durr based her assessment. *See* 20 C.F.R. § 404.1520c(c)(1), 416.920c(c)(1). For the ALJ to properly assess the consistency of Dr. Durr's opinion, he would have had to compare it to other evidence in the record, which he did not. The ALJ therefore failed to follow the regulations when he assessed the "consistency" of Dr. Durr's opinion. Although the ALJ's assessment of "supportability" is threadbare, Dr. Durr did rely on facially valid intelligence testing, which counts as substantial evidence of her opinion's supportability. *See* AR 507.[5]

---

[5]   It is not hard to envision a situation in which competing medical opinions are equally supported by their own evidence. On remand, the ALJ may well find that each opinion here is equally "supported" by the information in front of each medical source. Should that occur and contribute to a situation where the ALJ finds both opinions equally persuasive, yet he must choose between them, the ALJ is encouraged to consult the supplemental factors identified in the regulations. *See* 20 C.F.R. § 404.1520c(b)(2)-(3).

The ALJ rejected Dr. Paniccia's opinion, calling it "not persuasive," but he made no explicit finding of consistency or supportability. *Id.* at 23-24. As to supportability, defendant argues Dr. Paniccia's "own examination findings did not support his opinion," and the Court should affirm on this ground. *See* Doc. No. 13 at 10. While this may be defendant's interpretation of the record, it is not the ALJ's interpretation of the facts because the ALJ made no such finding. *See* AR 23-24. This Court's authority to affirm is limited to grounds asserted by the ALJ. *See Stout v. Comm'r of the Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). It may well be the case that Dr. Paniccia's opinion was not supported by his own findings, as defendant suggests, but that issue was for the ALJ to resolve in the first instance, not this Court. The Court therefore finds the ALJ failed to consider the supportability of Dr. Paniccia's opinion.

Although the ALJ made no explicit finding of consistency, this Court's review of the ALJ's analysis indicates the ALJ compared Dr. Paniccia's opinion to Dr. Durr's opinion, and concluded Dr. Durr's opinion was inconsistent with Dr. Paniccia's. *See* AR 23-24. Defendant urges the Court to adopt the same analysis. Doc. No. 13 at 10. This argument could be confused for an assessment based on "consistency" because, as a technical matter, Dr. Durr's opinion is "other evidence" in the record that appears inconsistent with Dr. Paniccia's opinion. The Court does not find this argument persuasive.

This Court cannot interpret the controlling regulations in a manner that leads to an absurd result. *See Ariz. State Bd. for Charter Sch. v. U.S. Dep't of Educ.*, 464 F.3d 1003, 1008 (9th Cir. 2006). The regulations do not explicitly direct the ALJ to assess consistency based on evidence in the record ***outside*** the opposing medical opinion. *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). At the same time, if the ALJ were able to decide Dr. Paniccia's opinion is unpersuasive because it is not consistent with Dr. Durr's, the ALJ's rejection of Dr. Paniccia's opinion amounts to little more than a judgment call, made in a vacuum, that Dr. Durr's assessment should control the outcome of plaintiff's case. This result would be absurd because it would turn the governing regulations into paper tigers that offer the ALJ no meaningful guidance. Under such a regime, the ALJ could pick an

opinion at random and just label it "inconsistent" with the competing opinion. Accordingly, the Court can only conclude the regulations require the ALJ to assess consistency in light of information *other than* that which is contained in the opposing medical opinion, in this case that of Dr. Durr. The ALJ committed legal error by failing to make such an assessment.

In sum, the ALJ's persuasiveness analysis was limited to a threadbare assessment that Dr. Durr's opinion was supported, and he gave no consideration to the supportability of Dr. Paniccia's opinion or to the consistency of *either* opinion. The ALJ therefore erred in his assessment of plaintiff's residual functional capacity by making a legal error. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Lanway v. Colvin*, 13-cv-5155-BHS, 2014 U.S. Dist. LEXIS 33601, at *7 (W.D. Wash. Feb. 10, 2014) (citations omitted).

### C. Whether the ALJ's Error Was Harmless

The Court can affirm an erroneous decision if the error was harmless. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). "In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole." *Lanway*, 2014 U.S. Dist. LEXIS 33601, at *7. Here, the vast majority of the ALJ's assessment focused on plaintiff's physical impairments. *See* AR 19-24. The ALJ's effect of plaintiff's mental impairment on her residual functional capacity rested solely on what amounts to a contest between Drs. Pannicia and Durr. *See id.* 23-24. Which medical source the ALJ believed was therefore a potentially outcome determinative consideration in the proceedings below. Thus, this is not a case where other evidence in the record can render the ALJ's decision harmless because, at least with regard to plaintiff's mental impairments, there is no other evidence in the record upon which this Court might uphold a decision affirming the ALJ's denial of benefits. Rather than "inconsequential" to the outcome, a proper evaluation of the two competing medical opinions was essential, and the ALJ failed to follow the regulations. The Court cannot find this error harmless.

//

# V. CONCLUSION

The Court concludes the ALJ failed to apply the correct legal standard when he evaluated plaintiff's claim for benefits. The final decision of the Commissioner of Social Security is hereby **VACATED** and the matter is **REMANDED** to the Commission for further proceedings consistent with this Order. On remand, the ALJ is specifically directed to evaluate the persuasiveness of both Dr. Durr's and Dr. Pannicia's opinions. As part of that evaluation, the ALJ must evaluate the supportability and consistency of ***both*** opinions, and the ALJ should consider the other factors enumerated in the regulations as necessary. The Clerk of the Court shall enter judgment accordingly and terminate the case. The entry of judgment will begin the running of the thirty-day period for which plaintiff, as the prevailing party, may make a timely application for attorneys' fees under the Equal Access to Justice Act. *See* 28 U.S.C. § 2412(d)(1)(B); *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

**IT IS SO ORDERED**

Dated: December 7, 2022

Hon. Karen S. Crawford
United States Magistrate Judge